**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

|  |  |
|---|---|
| **Crystal Carter, individually and on behalf of all others similarly situated**<br><br>    *Plaintiffs,*<br><br>v.<br><br>**The Reel Seafood House, LLC**<br><br>    *Defendant.* | **No.**  5:25-cv-00248<br><br><br>**COLLECTIVE ACTION COMPLAINT** |

The case implicates The Reel Seafood House, LLC ("Defendant") and the underpayment of wages owed to its employees—Plaintiff and employees like Plaintiff—including Defendant's failure to pay them minimum wages mandated by federal law, 29 U.S.C. § 201, et seq. Plaintiff brings the claims in this case as a collective action under the FLSA, 29 U.S.C. 216(b).

1

## **Table of Contents**

I.      Summary of Action ........................................................................................................ 3

II.     Parties .......................................................................................................................... 6

III.    Jurisdiction and Venue ................................................................................................ 7

IV.     Defendant is Required to Comply with the FLSA ...................................................... 8

V.      Facts ............................................................................................................................. 9

VI.     Collective Action Allegations ................................................................................... 17

VII.    Cause of Action No. 1: Failure to Pay the Minimum Wage ..................................... 18

VIII.   Wage Damages Sought .............................................................................................. 19

IX.     Prayer for Relief ........................................................................................................ 19

## I.    SUMMARY OF ACTION

1.    Defendant paid its servers and bartenders—including Plaintiff—wages that are less than the minimum wage. Instead of paying the minimum wage, it appears Defendant is attempting to take a credit for the tips its employees earn to meet the minimum wage requirement.

2.    Under the FLSA's tip credit provision—an affirmative defense—an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers. However, there are strict requirements that must be met before an employer obtain and continue to utilize the "tip credit." *See* 29 U.S.C. 203(m).

3.    An employer may pay tipped employees as little as $2.13 per hour by taking a credit for a portion of their tips up to a maximum tip credit of $5.12 per hour. *See* 29 U.S.C. 203(m).

4.    An employer who wants to obtain the benefit of the tip credit must advise an employee *in advance* of its use of the tip credit of all the notice provisions under the FLSA. *See Id*. (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection.").

5.    That is, "an employer must inform tipped employees of its use of the tip credit including [1] the amount of the employee's cash wage, the amount of the tip credit claimed by the employer, [2] that the amount claimed may not exceed the value of the tips actually received, [3] that all tips received must be retained by the employee except for a tip pooling arrangement limited to employees who customarily and regularly receive tips, and [4] that the tip credit shall not apply to any employee who has not been informed of all of these requirements." *Ettorre v. Russos Westheimer, Inc.*, No. 21-20344, 2022 U.S. App. LEXIS 7295, at *5-6 (5th Cir. Mar. 18, 2022)

(citing 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b)).

6.      An employer must also provide <u>written</u> notice of the information required by 29 C.F.R. § 516.28(a)(3). Specifically, the employer must provide all affected employees with <u>written</u> notice as follows: "[t]he amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week." *See* 29 C.F.R. § 516.28(a)(3).

7.      In addition, to obtain a tip credit, the employer must show that it permitted its tipped employees to retain all their tips other than tips contributed to a valid tip pool—that is, a tip pool that is fully distributed solely among customarily and regularly tipped employees. *See Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."); *Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

8.      Moreover, an employer will not be permitted to take a tip credit where its tipped employees kick-back, either directly or indirectly, to the employer for anything other than "the reasonable cost . . . of furnishing [an] employee with board, lodging, or other facilities, if [they] are customarily furnished by [the] employer to his employees." *Ettorre*, 2022 U.S. App. LEXIS 7295, at *9 (quoting 29 U.S.C. § 203(m)). In other words, an employer violates the tip credit if its tipped employees purchase uniform, tool, or any other item in connection with their employment "unless the 'facilities' it covers counts as a 'wage.'" *Ettorre*, 2022 U.S. App. LEXIS 7295, at *9.

9.      Also, an employer may only take a tip credit during limited times and when an employee is engaged in their tipped occupation. In other words, an employer is prohibited from

4

taking a tip credit and paying its tipped employees the subminimum hourly tip credit rate to perform non-tipped work that is *unrelated* to their tipped occupation. *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *Roussell v. Brinker Intern., Inc.,* No. 05 Civ. 3733, 2008 WL 2714079, at *12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his "tipped employee" capacity.") (quoting 29 C.F.R. 531.56(e)).

10.     Defendant violated the FLSA by paying Plaintiff and Collective Members less than minimum wage and Defendant committed multiple violations of the tip credit and therefore cannot rely on tips to supplement the subminimum hourly wages paid to Plaintiff and Collective Members:

    a.  **Violation for failure to inform:** Defendant failed to correctly inform Plaintiff and Collective Members of the desire to rely on the tip credit to meet their minimum wage obligations. For instance, Defendant failed to inform Plaintiff and Collective Members of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice. Defendant also failed to inform Plaintiff and Collective Members in writing when the amount of the tip credit changed from the prior week.

    b.  **Violation for illegal kickbacks for non-203(m) items:** Plaintiff and Collective Members were required to purchase certain clothing to work for Defendants, which reduced their wages below the minimum hourly wage required for tipped employees.

    c.  **Violation for improper handling of tip pool including exerting unlawful**

**control over Plaintiffs' tips vis-à-vis the tip pool:** Defendant did not distribute the tip pool pursuant to any agreement among its employees and cannot show that its tip pool was fully distributed solely among customarily and regularly tipped employees.

d. **Violation for performing work unrelated to tipped occupation:** Plaintiff and Collective Members were required to perform non-tipped work *unrelated* to their tipped occupations (i.e. dual jobs), including sweeping, cleaning and polishing silverware and glasses, cleaning the restaurant, scrubbing trays, preparing and setting up the opening stations, traying bread, cleaning windows, wiping tablets and kitchen doors, throwing out trash, and wiping and sweeping areas surrounding the storage walkways.

11.     As a result of these violations, Defendant has lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked. In other words, Defendant must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

## II.    PARTIES

12.     Plaintiff, Crystal Carter, is an individual and resident of Texas. Plaintiff Crystal Carter was employed by Defendant within the three-year period preceding the filing of this lawsuit. Plaintiff Crystal Carter has consented to be a party-plaintiff to this action as indicated by the notice of consent that will be filed with the Court.

13.     The Putative Server Collective Members ("Server Collective Members") are all current and former employees worked for Defendant as servers at any time within the three (3) year period since this Complaint was filed and were paid a direct cash wage of less than minimum wage. Collective Members will "opt in" pursuant to Section 216(b) of the FLSA by filing a consent to become a party-plaintiff. *See* 29 U.S.C. § 216(b).

14.     The Putative Bartender Collective Members ("Bartender Collective Members")

are all current and former employees worked for Defendants as bartenders at any time within the three (3) year period since this Complaint was filed and were paid a direct cash wage of less than minimum wage. Collective Members will "opt in" pursuant to Section 216(b) of the FLSA by filing a consent to become a party-plaintiff. See 29 U.S.C. § 216(b).

15.     At all times hereinafter mentioned, Plaintiff and Collective Members were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206, 207.

16.     Defendant The Reel Seafood House, LLC is an entity formed under the laws of Texas and can be served with process by serving its registered agent, David J Caddell, at 2613 Wildcat Roost, New Braunfels, Texas 78130.

### III.     JURISDICTION AND VENUE

17.     Personal jurisdiction exists over Defendant because it is a resident of the State of Texas and is doing business in Texas.

18.     Defendant also has sufficient minimum contacts with the State of Texas to confer personal jurisdiction. Defendant conducts business in Texas. Furthermore, Defendant contracted with and employs Texas residents, such as Plaintiff, to work for Defendant in Texas.

19.     This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), et. seq.

20.     Venue is proper in this District because Defendant resides in this District.

21.     Venue is also proper because a substantial part of the events and omissions giving rise to this claim occurred in this District.

#### IV.    DEFENDANT IS REQUIRED TO COMPLY WITH THE FLSA

22.    At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

23.    At all material times, Defendant has enjoyed yearly gross revenue in excess of $500,000 (exclusive of excise tax).

24.    At all material times, Plaintiff and Collective Members were employees engaged in commerce or the production of goods for commerce.

25.    At all relevant times, Defendant has acted directly or indirectly in the interest of an employer with respect to Plaintiff and the Collective Members.

26.    At all relevant times, Plaintiff and the Collective Members were individual "employees" of Defendant (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)).

27.    At all relevant times, Defendant has acted directly or indirectly in the interest of an employer with respect to Plaintiff and the Collective Members.

28.    At all relevant times, Defendant has collectively, or individually, been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had (a) employees engaged in commerce or in the production of goods for commerce, or (b) employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

29.    Finally, as part of their employment for Defendant, Plaintiff and the Collective

Members handled food and other food service items that were purchased across state lines or traveled in interstate commerce, or both. Plaintiff and the Collective Members also served customers who were traveling from out-of-state or across interstate lines. In addition, Plaintiff and the Collective Members regularly and frequently processed interstate credit card transactions. Finally, Plaintiff and Collective Members handled food and beverages that had been procured from outside of Texas or traveled across interstate lines, or both.

### V.    FACTS

30.    Defendant owns and operates the dining establishments commonly known as "The Reel Seafood House" where it employs servers and bartenders—Plaintiff and Collective Members—to serve customers who are dining at their restaurants.

31.    Plaintiff worked for Defendant within the three year period preceding the filing of this lawsuit.

32.    Plaintiff worked for Defendant at The Reel Seafood House.

33.    Plaintiff worked as both, a server and bartender, for Defendant.

34.    In exchange for their labor, Defendant paid its servers and bartenders an hourly wage that is far less than the federally mandated minimum wage.

35.    At all times, Defendant paid Plaintiff a directly hourly wage of less than $7.25 per hour (prior to accounting for the receipt of any tips).

36.    Because Defendant paid them less than minimum wage, its servers and bartenders must rely on tips left by customers to earn a living. *See Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 190 (5th Cir. 2015) (a tip is "'a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. . . . []'") (quoting 29 C.F.R. § 531.52) (emphasis added). The

FLSA permits employers in some circumstances, where all conditions are satisfied, to take a credit for a portion of those tips to make up the difference between the subminimum hourly wage and the full minimum wage. This method of payment is known as a "tip credit" under the FLSA.

37.     Here, Defendant purportedly seek to take advantage of the tip credit by paying the servers and bartenders less than the minimum wage and relying on tips to offset Defendant's obligation to pay the full minimum wage.

33.     The tip credit has a harmful effect on workers that threatens the health of the economy. Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter to large corporations operating restaurants advising of the ills of using the tip credit. (See https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited January 28, 2023). The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work.** As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.

*Id.* (emphasis in original).

38.     Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the tip credit to meet its minimum wage obligations.

39.     In this case, Defendant did not satisfy the strict requirements to use the tip credit. For instance, Defendant maintained a policy and practice whereby they failed to provide Plaintiff

and the Collective Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

40. Defendant also failed to provide Plaintiff and its other servers and bartenders with written notice of the information required by 29 C.F.R. § 516.28(a)(3).

41. Specifically, Defendant failed to provide Plaintiff and its other servers and bartenders with written notice of "[t]he amount per hour which [Defendants took] as a tip credit" was not "reported to [Plaintiff and the Collective Members] in writing each time it [was] changed from the amount per hour taken in the preceding week." *See* 29 C.F.R. § 516.28(a)(3).

42. Because Defendant failed to give Plaintiff and its other servers and bartenders notice of all the provisions required by the FLSA (including written notice of the contents required by 29 C.F.R. § 516.28(a)(3)), Defendant cannot rely on tips and assert the tip credit as an affirmative defense to their failure to pay Plaintiff and Collective Members the minimum wage required by Section 206 of the FLSA.

43. Second, Defendant did not allow Plaintiff and Collective Members to retain all tips as required by Section 203(m).

44. For instance, Defendant subjected Plaintiff and Collective Members to an illegal policy that required Plaintiff and Collective Members to pay for their uniforms, tools, and other non-203(m) items. Plaintiff and Collective Members paid for their own uniforms, shirts, order books, cash shortages or walked tabs, and other incurred other expenses in connection with

11

performing their job for Defendant.

45.    Because Plaintiff and Collective Members paid for their uniforms, tools, and other non-203(m) items, Defendant violated the tip credit because the costs of these non-203(m) items is a retention of tips and violates condition two of 29 U.S.C. § 203(m). *See e.g., Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972) (holding that a general deduction for cash register shortages tends to "shift part of the employer's business expense to the employees" and is impermissible if the deduction drops cuts into the statutory minimum wage); *Reich v. Priba Corp.*, 890 F. Supp. 586, 596 (N.D. Tex. 1995) ("The FLSA does not permit an employer to transfer to its employees the responsibility for the expense of carrying on an enterprise."); 29 C.F.R. 531.3(d)(1), (2); 29 C.F.R. 531.32(c); *see also Herman v. Collis Foods, Inc.*, 176 F.3d 912, 918 (1999) (recognizing "the FLSA's policy of preventing employers from exploiting § 203(m) deductions for profit.").

46.    Moreover, Plaintiff and the Server Collective Members were required to contribute a portion of their tips to a tip pool each shift.

47.    The FLSA requires that an employer ensure that "all tips received by [each] employee [be] retained by the employee . . . ." 29 U.S.C. § 203(m). The sole exception to the requirement that employees retain all earned tips, when an employer takes the tip credit, is where the employer operates a lawful tip pool. *See id.*; 29 C.F.R. § 531.54 ("[V]alid mandatory tip pools . . . can only include those employees who customarily and regularly receive tips.").

48.    Defendant violated the tip credit by unlawfully "exercising control over a portion of the[ir servers'] tips." *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707, 714 (N.D. Ind. 1998).

49.    Here, Defendant unilaterally determined how to allocate tips from the tip pool—

there was no agreement among the servers regarding the allocation of their tips from the tip pool.

50.    Because Defendant unilaterally decided, without input or agreement from Plaintiff and Collective Members, how to distribute the servers' tips from the tip pool, Defendant did not comply with the FLSA and thus cannot claim a tip credit. *See Reich*, 890 F. Supp. 586, 596 (holding "tipped employees must agree on the distribution of the tipped pool for the pool to be deemed valid.") (citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979)); 29 C.F.R. § 531.54 (defining a permissible "pooling arrangement" as one where "the employer redistributes the tips to the employees upon some basis to which they have mutually agreed among themselves").

51.    Defendant also illegally exercised control over Plaintiff's and Collective Members' tips when Defendant chose to utilize the tip pool to reduce payroll and pad their bottom line.

52.    Defendant cannot show that the tip pool was fully distributed solely among customarily and regularly tipped employees. *See Roussell*, 441 F. App'x 222, 230 (employer has "the burden to prove it operated a legal tip pool"); *see also Steele*, 826 F.3d at 242 ("The employer carries the burden to prove its entitlement to the tip credit."); *Montano*, 800 F.3d 186, 189 (holding employer "has the burden of establishing its entitlement to the tip credit.").

53.    Because Defendant cannot carry its burden to prove that it distributed the tip pool solely among customarily and regularly tipped employees, Defendant cannot utilize the tip credit to pay Plaintiff and the Server Collective Members. *See e.g., Barcellona*, 597 F.2d 464, 467 (holding that TGI Friday's had the burden to prove a valid tip pool arrangement after its servers brought suit questioning the validity of the tip pool).

54.    Defendant also maintained a policy and practice whereby servers and bartenders

were required to perform non-tipped work unrelated to their tipped occupations.

55.    Defendant continued compensating Plaintiff and the Collective Members at the subminimum "tip credit" rate while they were engaged in nontipped work unrelated to their jobs as servers and bartenders.

56.    While performing these non-tip generating duties, Plaintiff and the Collective Members were performing work that did not include interacting with or serving customers—the type of work that does not generally evoke tipping generosity.

57.    These non-tipped duties unrelated to their occupation as servers and bartenders include but are not limited to the following: sweeping, cleaning and polishing silverware and glasses, cleaning the restaurant, kitchen duties, scrubbing trays, setting up and breaking stations, restocking items, traying bread, cleaning windows, wiping tablets and kitchen doors, throwing out trash, sweeping and wiping areas surrounding the storage walkways, weekly restaurant maintenance tasks, and many other activities that were not related to their occupation as servers and bartenders.

58.    Further, Defendant required Plaintiff and Collective Members to perform non-tip producing work prior to the opening of the restaurant.

59.    Defendant required Plaintiff and Collective Members to arrive prior to the restaurant's opening for business, when there were no customers and no opportunities to earn tips, to perform manual labor cleaning and setup duties.

60.    Defendant also required Plaintiff and Collective Members to perform manual labor cleaning duties and set up duties when the restaurant was closed and when there was no opportunity to earn tips.

61.     However, Defendant continued paying Plaintiff and Collective Members at the tip credit rate—less than minimum wage—while requiring them to perform these nontipped tasks unrelated to their tipped occupation.

62.     Many of the nontipped tasks that Defendant required Plaintiff and Collective Members to perform are duties that should have been assigned to employees who Defendant is legally required to pay at or more than minimum wage.

63.     Instead of assigning these nontipped unrelated tasks to an employee who Defendant is obligated to pay at least minimum wage, Defendant attempted to take advantage of the tip credit and assign these tasks to Plaintiff and Collective Members while paying them a subminimum wage.

64.     When Plaintiff and Collective Members performed these non-tipped unrelated duties, they did not interact with customers and did not have an opportunity to earn tips.

65.     Indeed, Defendants did not have a policy prohibiting tipped employees from performing certain types of non-tipped work unrelated to their tipped occupation.

66.     Defendant did not track or record the amount of time the tipped employees spent performing non-tipped unrelated work, even though Defendant was capable of doing so.

67.     Defendant's timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendant failed to track the specific tasks for Plaintiff or Collective Members.

68.     Defendant used a point-of-sale system to record hours worked by tipped employees. Defendant, then analyzed the information collected by this system, including the labor costs at its restaurant.

69.     In the point-of-sale system, Defendant can create different "clock in" codes that

would allow tipped employees to record their time at the full minimum wage when performing non-tipped unrelated work.

70. However, Defendant did not allow its tipped employees to clock-in at the full minimum wage rate when performing the non-tipped unrelated work described in this Complaint.

71. Moreover, Defendant violated the FLSA by not even paying the minimum "tipped" hourly rate. Defendant required its tipped employees to pay for their own uniforms, shirts, order books, cash shortages or walked tabs, and incurred other expenses in connection with performing their job for Defendant. These expenses were primarily incurred for the benefit and convenience of Defendant.

72. Because Defendant violated the requirements to claim the tip credit, Defendant lost the right to take credit for tips and offset its obligation to pay Plaintiff and Collective Members the full minimum wage.

73. As such, Plaintiff and Collective Members were not compensated at the federally mandated minimum wage.

74. Defendant knew or should have known that its policies and practices violate the law, and Defendant has not made a good faith effort to comply with the FLSA. Rather, Defendant acted knowingly, willfully, and/or with reckless disregard of the law, carried and continued to carry out the illegal pattern and practice regarding their tipped employees as described in this Complaint. Defendant's method of paying Plaintiff and Collective Members was not based on a good faith and reasonable belief that their conduct complied with the law.

75. Given that Defendant failed to comply with the requirements to take the tip credit, Defendant has lost the ability to claim the tip credit and owe Plaintiff and the Collective Members

16

pay at the full minimum wage rate per hour for all hours they worked for Defendant.

### VI.   COLLECTIVE ACTION ALLEGATIONS

76.     Plaintiff realleges and reasserts each of the foregoing paragraphs as if set forth in full herein.

77.     Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendant as a server, bartender, or both for at least one week during the three-year period prior to the commencement of this action to the present.

78.     Defendant employed servers and bartenders who are similarly situated in that they share the same duties and were subject to the same violations of the FLSA.

79.     Like Plaintiff, the Server Collective Members and Bartender Collective Members were not given proper notice of the tip credit provisions and performed substantial work that was unrelated to their tip producing duties for a significant period of time.

80.     The Server Collective Members were also subject to the same unlawful tip pool.

81.     The other servers and bartenders employed by Defendant are similarly required to pay for uniforms and other items that were not board, lodging, or other facilities.

82.     The names and addresses of Collective Members are available from Defendant's records. To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

83.     Although the exact amount of damages may vary among the Collective Members in proportion to the number of hours they worked, damages for each individual can be easily

calculated using a simple formula.

84.    As such, the group of similarly situated employees ("Collective Members") can be defined as two separate collectives as follows:

**Server Collective Members. All current and former employees who worked for Defendants as servers at any time within the three (3) year period since this Complaint was filed and were paid a direct cash wage of less than minimum wage.**

**Bartender Collective Members. All current and former employees who worked for Defendants as bartenders at any time within the three (3) year period since this Complaint was filed and were paid a direct cash wage of less than minimum wage.**

### VII.    CAUSE OF ACTION NO. 1: FAILURE TO PAY THE MINIMUM WAGE

85.    Plaintiff realleges and reasserts each of the foregoing paragraphs as if set forth in full herein.

86.    This count arises from Defendant's violation of the FLSA in connection with their failure to pay the minimum wage. See 29 U.S.C. § 206.

87.    Plaintiff and Collective Members were paid hourly rates less than the minimum wage while working for Defendant.

88.    Plaintiff and Collective Members were not exempt from the minimum wage requirements of the FLSA.

89.    Defendant's failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and Collective Members being paid less than the Federal minimum wage rate.

90.    Defendant's failure to pay the minimum wage to Plaintiff and Collective Members in violation of the FLSA was willful and not based on a good faith belief that their conduct did not violate the FLSA. 29 U.S.C. § 255(a).

## VIII.   WAGE DAMAGES SOUGHT

91.     Plaintiff and the Collective Members are entitled to receive the difference between the minimum wage and the tip credit adjusted minimum wage for each hour they worked.

92.     Plaintiffs and Collective Members are entitled to reimbursement of all misappropriated tips plus an equal amount as liquidated damages.

93.     Plaintiffs and Collective Members are entitled to all their misappropriated funds, including repayment of all expenses Defendant required Plaintiffs and Collective Members to incur plus an equal amount as liquidated damages.

94.     Plaintiffs and Collective Members are entitled to an amount equal to all unpaid wages found due (including all their misappropriated tips and unlawful expenses incurred) as liquidated damages because Defendant's actions were not based upon good faith. *See* 29 U.S.C. § 216(b).

95.     Plaintiffs and Collective Members are entitled to recover damages for the past three (3) years because Defendant's violations were willful.

96.     Plaintiffs and Collective Members are entitled to recover their attorneys' fees and costs as required by the FLSA. See 29 U.S.C. § 216(b).

## IX.   PRAYER FOR RELIEF

97.     For these reasons, Plaintiff respectfully requests that judgment be entered in her favor and against Defendant, awarding Plaintiff and the Collective Members the following:

> a.   For an order pursuant to Section 216 of the FLSA finding Defendant liable for unpaid wages (including all misappropriated tips and all unlawful expenses incurred) due to Plaintiff (and those who join in the suit), and for liquidated damages equal in amount to the unpaid minimum wages (including all

misappropriated tips and paid business expenses) due to Plaintiff (and those who join in the suit);

b.  For an order awarding Plaintiff (and those who join in the suit) an amount of pre-judgment interest, as may be appropriate, and post-judgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

c.  For an order awarding Plaintiff (and those who join in the suit) all attorneys' fees incurred;

d.  For an order awarding Plaintiff (and those who join in the suit) all costs and expenses incurred in pursuing this action; and

e.  For an order granting any such other and further relief as this Court deems just and appropriate.

\*     \*     \*

Respectfully submitted,

By: _/s/ Drew N. Herrmann_
        Drew N. Herrmann
        Texas Bar No. 24086523
        drew@herrmannlaw.com
        Pamela G. Herrmann
        Texas Bar No. 24104030
        pamela@herrmannlaw.com

        **HERRMANN LAW, PLLC**
        801 Cherry St., Suite 2365
        Fort Worth, TX 76102
        Phone: 817-479-9229
        Fax: 817-840-5102
        ATTORNEYS FOR PLAINTIFF
        AND COLLECTIVE MEMBERS

20